RAWLINSON, Circuit Judge,
dissenting:
I respectfully dissent from the majority opinion in this case. It is important to note at the outset that this appeal challenges the denial of a preliminary injunction. Our review is for an abuse of the considerable discretion afforded the district court in making the determination whether a preliminary injunction should be entered. See Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir.2011). So long as the district court “got the law right,” we “will not reverse the district court.” Id. (citation omitted). Our scope of review is necessarily limited. See Sports Form, Inc. v. UPI, Inc., 686 F.2d 750, 752 (9th Cir.1982).
In a thoughtful and comprehensive 50-page order, the district court denied the request for a preliminary injunction. As the majority acknowledges, any factual findings made by the district court must be accepted unless clearly erroneous. See Alliance for the Wild Rockies, 632 F.3d at 1131. The district court prefaced its decision by noting its “careful” review” of the 164+ documents filed by the parties and the 5 + hours of oral argument during two hearings. See District Court Order, p. 2 n. 4. The district court also recognized that a preliminary injunction is an “extraordinary interlocutory remedy” that should be the exception rather than the rule. See id. at p. 3 (quoting Winter v. Natural Res. Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008)).
The district court found that not one of the named plaintiffs satisfied the criteria to be placed in the classification reflecting the highest acuity of need. See id. at p. 10. Keeping in mind that the services at issue are personal care services, and not medical care, the district court determined that the plaintiffs failed to establish a likelihood of irreparable harm. See id. at p. 12 & n. 13. The district court relied largely on its determination that the threatened injury (institutionalization) was not immi *1122 nent. See id. at p. 13 n. 14 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 101—02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). The district court emphasized that this factor was particularly important where a party seeks to enjoin official action on the part of a State. See id. (noting federalism concern).
The district court underscored the fact that Washington’s assessment mechanism did not reflect the individual need of each program participant. Rather, the assessment reflected the relative acuity of the need for personal care services. See id. at p. 14. The assessment essentially determined what share of the available resources a program participant should be allocated. See id. at p. 15. Because the assessment does not translate into a number of absolute hours of required personal services, the district court concluded that plaintiffs could not persuasively argue that a decrease in the number of personal care services hours resulted in the required showing that institutionalization was imminent. Indeed, the district court found to the contrary. See id. at p. 17 n. 20 (referring to evidence in the record that the 2009 reduction in personal care services hours “did not result in any negative consequences to personal care service beneficiaries ----”) (emphasis in the original). Specifically, program participants were not institutionalized due to the decrease in personal care service hours. See id.; see also id. at p. 18 (explaining that since the 2011 reductions went into effect, “over 99% of the sampled records reflected no complaint concerning the adequacy of allotted hours”).
I recognize that my colleagues in the majority rely on the declarations from the plaintiffs to support their reversal of the district court’s decision. However, without a showing of clear error on the part of the district court judge, it is not enough to simply credit one party’s view of the evidence. Actually, Supreme Court precedent dictates exactly the opposite approach. Where there are two views of the evidence presented, and the trier of fact selects one view over the other, no clear error can be shown. See Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (“Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.”) (citations omitted).
In this case, the plaintiffs presented declarations averring that institutionalization was likely if the personal service hours were decreased. The State defendants presented declarations refuting those submitted by the plaintiffs. At this stage of the proceedings and considering our limited standard of review, I am not persuaded that the district court clearly erred in crediting the State’s view of the facts.[1]
Ultimately, the district court determined that the plaintiffs’ declarations failed to make an adequate showing of a likely threat of harm because the declarations
(1) ascribe the threat of institutionalization to plaintiffs’ deteriorating medical conditions, unrelated to the provision of personal care service hours; (2) demonstrate ineffective management of currently allocated personal care service hours; or (3) identify non-personal care services as the cause of their predicted institutionalization.
Id. at p. 24.[2]
The district court described nine plaintiffs whose medical conditions worsened *1123 without regard to the decrease in personal care service hours. See id. at pp. 24-25. The district court also credited evidence from the State defendants regarding “[i]n-efficient [u]se of [cjurrently [ajllocated [pjersonal [cjare [sjervice [h]ours[,]” Id. at pp. 26-27, and the inclusion of non-personal care services in the asserted harm arguments, see id. at pp. 27-28.
Considering the district court’s determination regarding the likelihood of irreparable harm with the required deference to its factual findings, I am not persuaded that we should reverse the district court’s determination.
In my view, a similar conclusion is in order upon review of the district court’s resolution of plaintiffs’ claim predicated on the provisions of the Americans With Disabilities Act (ADA). The thrust of plaintiffs’ argument is that the mandated decrease in personal care services hours violates the ADA requirement that disabled individuals be integrated into the community for services rather than be institutionalized to receive services. According to plaintiffs, the decrease in personal care services hours will result in institutionalization of individuals who could remain in the community if the personal care services hours were maintained at their previous levels. The majority agrees with the plaintiffs’ contention, describing this issue as a serious question going to the merits of plaintiffs’ ADA claims.
The Supreme Court addressed the ADA’s integration provision in Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). In that case, mental patients were retained in institutional facilities after medical providers concluded that treatment in community-based facilities was appropriate. See id. at 593, 119 S.Ct. 2176. The Court held that the ADA required placement in a community-based facility if “the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with ... disabilities....” Id. at 587, 119 S.Ct. 2176. The Court fully acknowledged that the State had multiple and diverse obligations to its disabled citizens and a concomitant obligation to administer all its services “with an even hand....” Id. at 597, 119 S.Ct. 2176. The Court explained that the State’s obligation to provide a variety of services evenly for all program participants mandated that more leeway be afforded the States in administering those programs. See id. at 605, 119 S.Ct. 2176.
Given the leeway that the Supreme Court has instructed must be afforded the States in administering social services programs, the question of whether plaintiffs have raised a serious issue going to the merits is not as cut-and-dried as the majority portrays.
The majority urges “considerable respect” to the Department of Justice’s bald statement that “the elimination of services that have enabled Plaintiffs to remain in the community violates the ADA, regardless of whether it causes them to enter an institution immediately, or whether it causes them to decline in health over time and eventually enter an institution in order to seek necessary care.” Majority Opinion, pp. 1123 (quoting the statement of interest filed by the DOJ). However, the district court was not persuaded that the DOJ’s bald statement was entitled to deference. See District Court Order, p. 39 n. 42.
The Supreme Court in Olmstead stopped short of requiring that deference *1124 be given to the DOJ’s view. Rather, the Supreme Court stated:
We need not inquire whether the degree of deference described in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc. [467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ] ... is in order: [i]t is enough to observe that the well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.
Olmstead, 527 U.S. at 598, 119 S.Ct. 2176 (citation, alteration and internal quotation marks omitted) (emphasis added).
The fact that the district court elected not to defer to the DOJ’s bald, unreasoned statement did not run afoul of the Supreme Court’s permissive view of the deference owed to the DOJ’s interpretation of the integration regulation.
Because I conclude that the plaintiffs have not raised serious questions going to the merits of their claim, and because the district court committed no clear error in finding a lack of irreparable harm, I would affirm the district court’s denial of injunctive relief on those bases. However, I also note that Olmstead contains language supporting the district court’s determination that granting the relief requested by Plaintiffs would likely constitute a fundamental alteration of the State’s plan. See Olmstead, 527 U.S. at 597, 119 S.Ct. 2176 (“In evaluating a State’s fundamental-alteration defense, the District Court must consider, in view of the resources available to the State, not only the cost of providing community-based care to the litigants, but also the range of services the State provides others with ... disabilities, and the State’s obligation to mete out those services equitably.”). This same rationale supports the district court’s determination that the public interest favors permitting the State to equitably balance the needs of all persons who are served by the Medicaid program rather than requiring the State to accommodate the needs of a discrete subset of that population at the expense of others in need.
Keeping in mind our limited scope of review and the deference owed to the district court’s factual findings, I do not agree that the district court abused its discretion when it denied the requested preliminary injunction. Therefore, I respectfully dissent from the majority opinion.

. It is of some interest that the district court noticed that the plaintiffs' declarations of harm were “repeated verbatim or nearly verbatim throughout the various declarations ...” Id. atp. 24 n. 30.

. The district court also noted the use of qualifying language in the declarations that ren *1123 dered them "speculative at best ...” Id. at p. 25 n. 31.